UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DALE PARKER, | ) | Case No. 6:06-bk-02973-KSJ |
| CAROLE PARKER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

MEMORANDUM OPINION PARTIALLY
DENYING DEBTORS' MOTION FOR SANCTIONS (AUTOMATIC STAY ISSUES)

The debtors argue they are entitled to sanctions against one of their creditors, Nuvell Financial Services, because Nuvell repossessed their van 47 days after the first meeting of creditors, knowing that the debtors intended to redeem the vehicle. The debtors contend that, because they were working on getting funding for the redemption payment, the automatic stay remained enforceable and made the repossession improper.[1] For the reasons explained below, the Court partially denies the debtors' Motion for Sanctions, finding that the automatic stay had terminated prior to the repossession by Nuvell pursuant to Sections 362(h) and 521(a)(6) of the Bankruptcy Code.[2]

There are no factual disputes. Nuvell holds a security interest in the debtors' 2005 Dodge Grand Caravan. The debtors filed a voluntary Chapter 7 petition on November 7, 2006, when they

---

[1] The debtors also assert, in their Motion for Sanctions against creditor Nuvell Financial Services (Doc. No. 17), that the repossession was improper under Florida state law. Pursuant to Nuvell's Response to the Motion for Sanctions (Doc. No. 22) and Nuvell's separate Motion to Establish Lack of Subject Matter Jurisdiction and to Dismiss the Portions of Debtors' Motion for Sanctions that are Not Related to a Case under Title 11 (Doc. No. 27), Nuvell argues that, if the automatic stay was not in place, then a state court, not the bankruptcy court, properly should hear the issue as to whether the repossession was appropriate under Florida state law. At the initial hearing on the debtors' Motion for Sanctions, the parties agreed that the Court would resolve only the issue of whether the automatic stay applied and, if so, whether Nuvell had violated the automatic stay. All other issues, such as whether this Court can or should decide the balance of the issues, are reserved for further hearing on March 6, 2007.

[2] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

owed approximately $28,500.00 on the vehicle. The debtors timely filed a Statement of Intentions indicating they would redeem the vehicle, and then promptly stopped making any further payments to Nuvell. The debtors had informal approval for a redemption loan, but had not received any funds and had not informed any Nuvell representative of their efforts to get redemption funding, or, for that matter, to determine whether Nuvell would agree with the debtors' valuation of the van. The meeting of creditors was held and concluded on December 6, 2006.

On January 25, 2007, 47 days after the meeting of creditors, Nuvell, acting through an agent, repossessed the van. Later on the same day, the debtors filed their Motion to Redeem the vehicle for $12,000.00 (Doc. No. 15),[3] and Nuvell returned the van to the debtors. The debtors then filed their Motion for Sanctions alleging the repossession was made in violation of the automatic stay, was overly-aggressive, breached the peace, and violated state law. The only issue now before the Court is whether Nuvell violated the automatic stay in repossessing the van.

Nuvell argues that it did *not* violate the automatic stay because the stay already had terminated when the debtors failed to timely fulfill their obligation to redeem the vehicle within 45 days of the first meeting of creditors. The debtors argue that the automatic stay was still in place because they were actively pursuing redemption funding to redeem the van within the 45 day period. Apparently, the debtors argue that, prior to repossessing the van, Nuvell had an obligation to check with the debtors to see if they had taken any steps to complete the redemption, or, alternatively, to file a motion with the bankruptcy court confirming the stay was no longer in existence. The issue is whether a debtor's non-public action, not communicated to a creditor, is sufficient to keep the stay in effect.

---

[3] The debtors subsequently filed an Amended Motion to Redeem reducing the value of the van to $9,500. (Doc. No. 40).

Section 362 of the Bankruptcy Code creates the automatic stay and provides the consequences for a debtor's failure to comply with the debtor's duties established by Section 521. Section 362(h)(1) provides, in pertinent part:

> (h)(1) In a case in which the debtor is an individual, *the stay provided by subsection (a) is terminated* with respect to personal property of the estate or of the debtor securing in whole or in part a claim…*and such property of the estate shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)*[4] –
> (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property…and, if retaining such personal property…*redeem such personal property pursuant to section 722. . .* and
> (B) to take timely the *action* specified in such statement, as it may be amended before expiration of the period for taking action
> * * *

11 U.S.C. § 362(h)(1) (emphasis added).[5] The rule is clear—the automatic stay ends if a debtor does not take timely action to redeem his personal property within (at most) 45 days of the initial meeting of creditors.

Section 521(a) of the Bankruptcy Code provides little guidance on the extent of the actions a debtor needs to take to redeem property, providing merely that the "debtor shall *perform* his

---

[4] Section 521(a)(2)(A) provides, in pertinent part:
(a) The debtor shall--
****
(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

[5] Section 521(a)(2)(B) of the Bankruptcy Code gives the debtor only 30 days to perform the acts needed to redeem property, whereas Section 521(a)(6) gives the debtor 45 days to perform. In this case, the time difference, 30 versus 45 days, is irrelevant because Nuvell repossessed the van 47 days after the initial meeting of creditors. In any event, the longer 45-day period is the maximum time the debtor should have to perform his intentions.

intention" within the applicable time period.  If the debtor fails to timely act, Section 521(a)(6)[6] provides the remedy: "the stay under section 362(a) is terminated, … such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law."   In re Steinhaus, 349 B.R. 694 (Bankr. D. Idaho 2006).  Both Sections 521(a)(6) and 362(h) are consistent—the automatic stay terminates when a debtor fails to timely act.

But, practically, how much "action" is needed to maintain the stay in place?  Section 722 of the Bankruptcy Code, which addresses a debtor's redemption rights, merely allows an individual debtor to redeem property "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption."  11 U.S.C. § 722.  However, this section does not discuss the details of how redemption occurs, particularly in situations like this one where the parties disagree on the value of the allowed secured claim,[7] or whether preliminary actions taken to redeem the property are sufficient to stop the stay from automatically terminating under Section 362(h).

---

[6] The full text of Section 521(a)(6) provides:
   (a)  The debtor shall—
\* \* \*
      (6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—
         (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
         (B) redeems such property from the security interest pursuant to section 722.
If the debtor fails to so act within the 45-day period referred to in paragraph (6), *the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law,* unless the court determines on the motion of the trustee filed before the expiration of such 45-day period, and after notice and hearing, that such property is of consequential value or benefit to the estate. . .
11 U.S.C. § 521(a)(6) (emphasis added).

[7] Nuvell has filed an objection to the debtors' request to redeem contending the van has a value greater than $9,500 (Doc. No. 27).

The debtors argue that searching for redemption financing was enough "action" to keep the stay in place citing In re Price, 370 F.3d 362 (3rd Cir. 2004), a case decided prior to the 2005 amendments to the Bankruptcy Code. The debtors rely on Price for the notion that Section 521 does not require completion of the action stated by the debtor in the statement of intentions, but rather the "[d]ebtor is merely required to take steps toward the completion of the intention, arguably thereby showing good faith." (Doc. No. 41). The issue in Price was whether a debtor could retain a vehicle, or "ride-through" bankruptcy, while continuing to make regular monthly payments to a creditor without electing to surrender, redeem, or reaffirm a debt. The court held the debtors could take the fourth election of "riding through" bankruptcy so long as they continued to make their regular monthly payments.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) has eliminated a debtor's ability to "ride-through" bankruptcy by adding Sections 362(h) and 521. No longer can a debtor simply make payments to his lender and retain his car, nor, in the Eleventh Circuit, has the debtor been able to do so for some time. Taylor v. Age Federal Credit Union (In re Taylor), 3 F.3d 1512 (11th Cir. 1993). The debtor must elect to surrender, redeem, or reaffirm the debt, and he must do it timely. The rationale underlying the Price decision is no longer applicable.

Moreover, the facts in Price are distinguishable. In Price, the debtor sent his regular monthly payments to the creditor. Here, the debtors stopped making their payments and did not make any effort to communicate with Nuvell from the date they filed their bankruptcy through the repossession of the van. Not hearing anything from the debtors, regarding redemption or otherwise, Nuvell logically concluded that the debtors no longer intended to go forward on their stated intention to redeem the van.

The debtors argue that Nuvell should have called the debtors before repossessing the van, but they have given no justification for this requirement to impose an additional obligation on the creditor. The debtors chose to file bankruptcy. The debtors stated their intention to redeem the van.

The debtors decided not to pay their regular monthly car payments in the meantime. The debtors, for whatever reason, did not timely file a motion to redeem or to otherwise contact Nuvell with their plans. The obligations imposed by Section 521 of the Bankruptcy Code impose duties on the *debtors* to act timely to perform their stated intentions. It imposes no similar duty on a *creditor* to inquire if the debtor is making any progress in performing the stated intention.

If a debtor timely performs his duties, the debtor will continue to enjoy the protection of the automatic stay, and the burden shifts to the creditor to establish grounds for relief from the automatic stay. However, if a debtor fails to timely perform his duties under Section 521, the stay is terminated. The debtor bears the burden to establish that he timely has performed his duties under Section 521. This can be done a number of ways.

The simple answer is that the prudent debtor will file a motion to redeem or a reaffirmation agreement prior to the end of the 45-day period following the first meeting of creditors. Such a bright line test would help both debtors and creditors know whether the automatic stay remains enforceable. Moreover, the debtors have ample time, between 65 and 85 days from the petition date, to file this precautionary motion.

The Court, however, will not discount the possibility that compliance with the debtor's performance duties also may be accomplished in less formal ways. For example, the debtor could call the creditor and get their consent for an extension to the performance period. In any event, a debtor, such as the debtors in this case, who stops his regular monthly payments, does nothing to keep the creditor informed, and fails to file a motion to redeem, clearly has not demonstrated the minimal effort needed to perform his stated intentions.

As such, the Court concludes that the debtors have failed to meet their burden of demonstrating that they performed their duties under Section 521 of the Bankruptcy Code and, pursuant to Sections 362(h) and 521(a)(6) of the Bankruptcy Code, the stay automatically terminated on January 23, 2007, prior to the date Nuvell repossessed the van. Because no stay

existed, sanctions are not appropriate. The debtors' Motion for Sanctions for Violation of the Automatic Stay (Doc. No. 17) is partially denied. The Court will consider the remaining issues raised by the debtors' Motion for Sanctions, as well as Nuvell's Motion to Establish Lack of Subject Matter Jurisdiction and to Dismiss the Portions of Debtors' Motion for Sanctions that are Not Related to a Case under Title 11 (Doc. No. 27), at a hearing scheduled for **March 6, 2007, at 11:00 a.m.** A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, this 1st day of March, 2007.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtors: Dale and Carole Parker, 5818 Frontier Lane, Orlando, FL  32839

Debtors' Counsel: L. Todd Budgen, Pantas Law Firm PA, 250 North Orange Avenue, 11th Floor, Orlando, FL  32801

Creditor: Nuvell Financial Services, LLC, P.O. Box 7100, Little Rock, AZ  72223-7100

Creditor's Counsel: Rachael M. Crews, P.O. Box 3146, Orlando, FL  32802-3146

Trustee: Scott R. Fransen, P.O. Box 4965, Winter Park, FL  32793

U.S. Trustee: 135 W. Central Blvd., Suite 620, Orlando, FL  32801